UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

-vs-   Case No. 6:11-cr-240-Orl-28TBS

JOHN K. FREEMAN

_____

ORDER

Defendant John K. Freeman's conduct in 2005 led to his conviction in 2012 of bankruptcy fraud.[1] While his appeal of the conviction and sentence was pending before the Eleventh Circuit Court of Appeals, Defendant filed in this Court a Motion for New Trial Based on Newly Discovered Medical Evidence (Doc. 196). The evidence that Defendant contends justifies a new trial pertains to the recent diagnosis of a brain tumor. Defendant maintains that had he known of the tumor at the time of trial, he would have successfully argued that he did not have the criminal intent necessary to commit bankruptcy fraud. The Eleventh Circuit has stayed Defendant's appeal pending action by this Court on the motion for new trial. (See Doc. 199). Having considered Defendant's arguments and submissions, the Court must deny the motion.

I.  Background

Although nearly ten years have passed since Defendant's criminal conduct, closure of this case remains elusive. The jury returned its guilty verdict in August 2012, but sentencing was delayed. Before the scheduled sentencing, the Court received an

_____
[1] 18 U.S.C. § 152(1).

anonymous letter from someone purporting to be a juror in the case reporting alleged misconduct on the part of an Assistant United States Attorney. The Court delayed the sentencing hearing until after it had interviewed all of the jurors and the Federal Bureau of Investigation had concluded its investigation into the letter's authorship. The FBI investigation was inconclusive, but the Court determined that the allegations of misconduct were baseless and that the letter had been written by Defendant or some other person interested in an outcome favorable to Defendant. (See Doc. 168 at 6-7). Finally, on September 20, 2013, the Court entered its judgment of guilt and sentenced Defendant to serve five years on probation. (Judgment, Doc. 174).

After sentence was imposed, Defendant filed a timely notice of appeal to the Eleventh Circuit Court of Appeals on October 7, 2013. (Doc. 176). In early February 2014, before Defendant's initial appellate brief was filed, medical doctors determined that Defendant had a large tumor in the left frontal lobe of his brain. (See Demery Report, Doc. 196-3). Three days later, the tumor was successfully removed. The following month, on March 21, 2014, counsel for Defendant filed with the appellate court an Unopposed Motion to Stay Briefing Schedule. (Doc. 201-1 at 2-5). In that motion, counsel explained that Defendant had retained Jason Demery, Ph.D., a psychologist, "to examine the medical records and examine [Defendant]." (Id. at 3). Counsel for Defendant represented in that motion that Dr. Demery had already advised him that Defendant's "tumor very likely was present at the time of the conduct which led up to the indictment in this case and affected [Defendant's] judgment and behavior at the time of the alleged offense." (Id. at 2-3). Counsel explained that "once [Defendant] has Dr. Demery's opinion, assuming it supports the current preliminary conclusions, counsel . . . will promptly follow up and file a Motion

for New Trial under Rule 33." (Id. at 4). The Eleventh Circuit granted the Motion to Stay Briefing Schedule, and when Dr. Demery's expert report was not filed by early June 2014, Defendant again filed an Unopposed Motion to Stay Briefing Schedule reiterating the same grounds for relief. (Doc. 201-2 at 2-5). Again, the circuit court granted the motion.

On July 7, 2014, Dr. Demery issued his long-awaited report based on his May 19, 2014 evaluation of Defendant. (Doc. 196-3). Contrary to what had been anticipated, the report did not state that at the time of Defendant's criminal conduct nine years earlier "the tumor very likely was present" or that Defendant's judgment was impaired at that time for that or any other reason. Instead, the report was strikingly vague, concluding only that "the tumor likely impacted [Defendant's] judgment, behavior and memory and other forms of functional cognition over the course of the past several years." (Id. at 10-11).[2]

On August 12, 2014, after receipt of Dr. Demery's report, Defendant again moved in the appellate court, without opposition, to stay the briefing schedule. (Doc. 201-3 at 3-6). In that motion, making no reference to Dr. Demery, Defendant for the first time mentioned William A. Friedman, M.D., stating that "counsel is still waiting for the University

---

[2] The opinion paragraph of Demery's Report states in full:

It is my opinion, within a reasonable degree of neuropsychological certainty, that [Defendant's] judgment, behavior and memory were significantly impacted by the presence of the large, left frontal lobe tumor that was neuroradiologically identified on 02/02/14 and that the tumor likely impacted his judgment, behavior and memory and other forms of functional cognition over the course of the past several years. Although [Defendant] does not presently manifest a neuropsychological impairment, he does appear to meet DSM-5 Diagnostic Criteria for Adjustment Disorder with Mixed Anxiety and Depressed Mood (309.28). His mood state appears to be negatively impacted by his legal status.

(Doc. 196-3 at 10-11).

of Florida to give conflict clearance for Professor Friedman to work on the case in order to follow up and file a Motion for New Trial under Rule 33." (Id. at 4). The Eleventh Circuit granted the motion.

Defendant did not, however, wait for a report from Dr. Friedman before filing his motion for a new trial; instead, he filed that motion in this Court on October 14, 2014, relying on the July 7 report of Dr. Demery and not mentioning Dr. Friedman. (Doc. 196). That same day, he filed with the circuit court his Motion to Relinquish Jurisdiction to the District Court to Consider [Defendant's] Rule 33 Motion for New Trial. Three weeks later, the circuit court stayed Defendant's appeal pending a ruling from this Court on the new trial motion. (See Doc. 199).

Using the same description of the anticipated evidence he included in the March 21 motion filed in the appellate court, counsel for Defendant asserts in the new trial motion that Dr. Demery "has examined [Defendant] and conducted necessary testing and is of the opinion that the tumor very likely was present at the time of the conduct which led up to the indictment in this case and affected [Defendant's] judgment and behavior at the time of the alleged offense," this time referring to Dr. Demery's July 7 report. (Doc. 196 at 3-4). In its opposition (Doc. 197) to Defendant's motion for new trial, the Government focuses on Dr. Demery's report and notes that Dr. Demery has not provided an opinion as to whether the tumor existed in 2005 or its effect on Defendant at that time if it did exist. The Government argues that Dr. Demery's opinion does not pass Daubert[3] scrutiny and that his report is cumulative of trial evidence.

---

[3] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

4

Having read the Government's response and perhaps realizing the limited value of Dr. Demery's report, Defendant then moved for an extension of time to file a reply. (Doc. 198). In the motion for extension of time, Defendant asserted that he needed an additional thirty days to obtain "an additional expert witness report" from Dr. Friedman—the chairman of the Neurosurgery Department at the University of Florida College of Medicine—that he expected would "be responsive to much of what the government argued in its response." (Id. at 1). In its spirited opposition to the motion for extension of time, the Government correctly observed that a recent report from Dr. Friedman would not be a proper basis for a reply. (See Doc. 201). The Court nevertheless granted Defendant's motion to extend time to file a reply and allowed him two weeks to submit further evidence and argument regarding his new trial motion. (Order, Doc. 202).

On December 22, 2014—forty-eight days after the filing of Defendant's motion to extend time to file a reply—Defendant filed Dr. Friedman's report bearing the same date. (Docs. 203 & 203-1). Dr. Friedman's one-paragraph, three-sentence opinion, written on plain paper without letterhead, in its entirety states:

> To Whom It May Concern:
>
> I have reviewed the hospital records and MRI scans concerning Mr. John Freeman's very large left frontal meningioma. It is my opinion, within reasonable medical doubt, that Mr. Freeman's judgment was severely impaired by the presence of this tumor. In this regard I completely agree with the neuropsychological evaluation performed by Dr. Demery.

(Doc. 203-1). As Dr. Friedman ever so succinctly states, he agrees completely with Dr. Demery's report, but he adds no additional information.[4] The Government filed its

---

[4] Defendant did not submit any argument in reply to the Government's response to the new trial motion. All that Defendant filed was Dr. Friedman's one-paragraph opinion,

5

Response (Doc. 204) regarding the Friedman opinion on January 5, 2015, and Defendant's motion for new trial is now ripe for ruling.

## II. Legal Standards

### A. Federal Rule of Criminal Procedure 33

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "'To succeed on a motion for new trial based on newly discovered evidence, the movant must establish that (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.'" United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003) (quoting United States v. Ramos, 179 F.3d 1333, 1336 n.1 (11th Cir. 1999)). "The failure to satisfy any one of these elements is fatal to a motion for new trial." United States v. Lee, 68 F.3d 1267, 1274 (11th Cir. 1995). In the Eleventh Circuit, "motions for a new trial are highly disfavored, and . . . district courts 'should use "great caution" in granting a new trial motion based on newly discovered evidence.'" Jernigan, 341 F.3d at 1287 (quoting United States v. Garcia, 13 F.3d 1464, 1472 (11th Cir. 1994)).

In this case, the Government concedes that the first two elements listed in Jernigan are satisfied, but it challenges the remaining three elements—cumulativeness, materiality, and likelihood of a different result. These three elements overlap somewhat; "[t]he

---

a notice of its filing, and another copy of Dr. Demery's report (Docs. 203-1, 203, and 203-2).

requirement that the evidence be material and not cumulative is closely related to the requirement that the evidence be such that it would probably produce an acquittal." 3 Charles Alan Wright & Sarah N. Welling, Federal Practice and Procedure § 584, at 461-62 (4th ed. 2011). "Irrelevant evidence is not admissible," Fed. R. Evid. 402, and inadmissible evidence, of course, is not evidence that would likely result in acquittal.

### B.   Federal Rule of Evidence 702

The evidence that Defendant presents in support of his new trial motion is in the form of expert testimony, and therefore Rule 702 of the Federal Rules of Evidence, which governs the admissibility of such testimony, bears on the resolution of Defendant's motion. This rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"[T]he trial court's obligation under Federal Rule of Evidence 702 is to serve as the gatekeeper for the admission of scientific expert testimony." United States v. Bachynsky, 415 F. App'x 167, 173 (11th Cir. 2011).

The requirement of Rule 702(a) that the evidence "will help the trier of fact to understand the evidence or to determine a fact in issue" "goes primarily to relevance." Daubert, 509 U.S. at 591. "'Expert testimony which does not relate to any issue in the case

7

is not relevant and, ergo, non-helpful.'" Id. (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02], at 702-18 (1988)). "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). Here, the Government "does not dispute Demery's qualifications as a neuropsychologist," (Doc. 197 at 14 n.3), but it does challenge the helpfulness and reliability of Dr. Demery's opinion.[5]

### III. Discussion

Defendant's new trial motion fails because the newly discovered evidence upon which the motion is based is not relevant to any issue before the Court. In other words, it is not "material to issues before the court" as required for a grant of a Rule 33 motion, nor would it "help the trier of fact to understand the evidence or to determine a fact in issue" as required for admissibility under Federal Rule of Evidence 702. Additionally, and relatedly, the evidence is not "such that a new trial would probably produce a different result." Furthermore, even if the evidence were relevant, the Government correctly argues that it does not otherwise withstand Daubert scrutiny.

In support of his new trial motion, Defendant has offered a startling image taken of the brain tumor in February 2014 prior to its removal (Doc. 196-1) as well as Dr. Demery's July 2014 report (Doc. 196-3) and Dr. Friedman's December 2014 one-paragraph opinion

---

[5] The Government also apparently does not challenge Dr. Friedman's qualifications; however, Dr. Friedman added nothing to Dr. Demery's report but instead merely adopted it and endorsed it while restating its bare conclusion without any explanation and without providing any timeframe whatsoever. As such, Dr. Friedman's three-sentence opinion will not be separately addressed in this Order. The analysis with regard to Dr. Demery's opinion applies with at least equal force to the opinion of Dr. Friedman.

(Doc. 203-1) endorsing Dr. Demery's report. Defendant asserts in his motion that Dr. Demery "has examined [Defendant] and conducted necessary testing and is of the opinion that the tumor very likely was present at the time of the conduct which led up to the indictment in this case and affected [Defendant's] judgment and behavior at the time of the alleged offense." (Doc. 196 at 3-4 (referring to Dr. Demery's report)). As noted earlier, however, this assertion is troubling because Dr. Demery's report says nothing of the kind. In fact, the report does not include an opinion as to when the tumor appeared or how long it was—or even may have been—present in Defendant's brain before its February 2014 removal.

After examining Defendant's medical records, interviewing and testing Defendant, and speaking to members of Defendant's family and a friend, Dr. Demery reached several conclusions, none of which is germane to these proceedings. With regard to the all-important questions of whether the tumor existed in 2005 and if so, what effect the tumor may have had on Defendant's ability to form intent to commit bankruptcy fraud in 2005, Dr. Demery offers nothing. The most that Dr. Demery is willing to say in his report is that "the tumor likely impacted [Defendant's] judgment, behavior and memory and other forms of functional cognition over the course of the past several years."[6] (Doc. 196-3 at 10-11). He offers no assistance in interpreting what he means by "several years." In any event, "the past several years" certainly does not extend to nine years earlier, and absent a tie to the

---

[6] Dr. Demery notes in his report that "[t]he purpose of the present evaluation was to objectively evaluate [Defendant's] **current** level of cognitive and emotional functioning and to also render an opinion about the impact his frontal lobe tumor may have had on his judgment, behavior and cognition (memory) **over the past several years**." (Doc. 196-3 at 10) (emphasis added). Defendant was evaluated on May 19, 2014, and his "current" level of functioning is thus his functioning on that date, and the "past several years" are the several years prior to that date.

9

pertinent timeframe Dr. Demery's opinion is not relevant to this case.[7] Cf. United States v. Puerto, 392 F. App'x 692, 707-08 (11th Cir. 2010) (affirming trial court's exclusion of expert testimony of neuropsychologist and neurologist regarding damage to left temporal lobe of defendant's brain where "[n]either of the proposed expert witnesses could testify with any medical certainty that [the defendant] was either insane **at the time of the offenses** or lacked the requisite mens rea **at the time of the offenses**" (emphasis added)).

In preparing the report for Defendant's attorney, Dr. Demery was, of course, disadvantaged by not having had the opportunity to evaluate Defendant in 2005 or at any time before the tumor was surgically removed. When Dr. Demery evaluated Defendant in May 2014—three months after the tumor's removal—Defendant did not suffer from a "neuropsychological impairment." (Doc. 196-3 at 10). Dr. Demery offers no scientific basis for providing an opinion that Defendant suffered from diminished capacity of any sort in 2005, and he provides no such opinion. Cf. Puerto, 392 F. App'x at 702-08. And, while Dr. Demery credited the self-serving, subjective historical accounts of Defendant's behavior provided by Defendant's ex-wife, Defendant's daughter, Defendant's friend and employee, and Defendant himself, even those accounts were not enough for him to affirmatively state that Defendant suffered from a diminished capacity in 2005. Because the only evidence submitted in support of the new trial motion—Dr. Demery's report—does not pertain to the time period of the Indictment, the evidence is not relevant. The fact that it is not "material to issues before the court" is fatal to Defendant's new trial motion.

---

[7] United States v. Sandoval-Mendoza, 472 F.3d 645 (9th Cir. 2006)—cited by Defendant—is easily distinguished. There, it was undisputed that the defendant's brain tumor had been diagnosed eight years prior to the crimes at issue. See id. at 647.

10

To the extent that Dr. Demery's report could be construed as stating an opinion—through a series of inferences—that the tumor was present in Defendant's brain in 2005 and affected his behavior, judgment, memory, and other forms of cognition at that time, such an opinion does not survive <u>Daubert</u> scrutiny. Again, Rule 702 requires that an expert's testimony be "based on sufficient facts or data" and "the product of reliable principles and methods" and that "the expert has reliably applied the principles and methods to the facts of the case." Demery's opinion does not satisfy these criteria because it is based only on Dr. Demery's interviews of Defendant, his family members, and a friend. In this regard, Dr. Demery's report states:

> [Defendant] does not presently manifest any neuropsychological impairment; however, based on his self-report during the clinical interview and on collateral reports he appears to have manifested neuropsychological and neurobehavioral dysfunction over the past several years that was related to his large, left frontal lobe meningioma. His judgment, behavior and cognitive (memory) impairments described in the report above reflect classic frontal lobe dysfunction described in the scientific literature. [Defendant's] lack of drive, impulse control problems, poor judgment & decision making, memory dysfunction, dysfluent speech, and impaired motor skills are consistent with frontal lobe dysfunction due to a large, left frontal lobe meningioma. The chronicity of his reported neuropsychological and neurobehavioral dysfunction indicates that the tumor has likely effected [sic] his behavior for numerous years and all three collateral sources indicated that his judgment, behavior and functional cognition have markedly improved following tumor resection.

(Doc. 196-3 at 10). Insofar as Dr. Demery's report may be read as expressing an opinion with regard to 2005, Dr. Demery speculates both as to the presence of the tumor and as to whether the behavior described by Defendant and others was caused by the tumor. Rather than offering a scientific basis for concluding that the tumor was present at that time or that the tumor affected Defendant's behavior, Dr. Demery states only that Defendant's observed behaviors "are consistent with frontal lobe dysfunction due to a large, left frontal

lobe meningioma" and that based on the reported behaviors "the tumor has likely effected [sic] his behavior for numerous years." (Id.).

In response to the Government's cogent and extensive attacks on the lack of principles and methods employed in Dr. Demery's report, Defendant has offered absolutely nothing. Although given the opportunity to present responsive argument after the Government filed its opposition, (see Order, Doc. 202), Defendant submitted nothing additional except the opinion of Dr. Friedman. Defendant has not met his burden as the proponent of expert testimony to establish the reliability of the opinions offered.[8]

In sum, the newly discovered evidence proffered by Defendant in support of his new trial motion is neither relevant nor admissible evidence. Accordingly, it is not material to any issue before the Court and is not "such that a new trial would probably produce a different result" as required under Rule 33. Defendant's new trial motion is therefore without merit.[9]

## IV. Conclusion

For the reasons stated herein, it is **ORDERED** that the Motion for New Trial Based on Newly Discovered Medical Evidence (Doc. 196) filed by Defendant is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on January 13, 2015.

JOHN ANTOON II
United States District Judge

---

[8] Again, this analysis assumes that the opinions are relevant to the case in the first instance.

[9] In light of the conclusions in the text, the Court finds it unnecessary to address the Government's cumulativeness argument.

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
John K. Freeman
Clerk, United States Court of Appeals for the Eleventh Circuit